O'HARE *v.* CITY OF DETROIT.

VAN KERSCHAEVER *v.* SAME.

1. APPEAL AND ERROR—PLEADING—MOTION TO DISMISS.
    All well-pleaded facts in a declaration are accepted as true for the purpose of review on appeal from an order granting defendants' motion to dismiss.

2. MUNICIPAL CORPORATIONS—GOVERNMENTAL FUNCTION—STOP SIGNS.
    The establishment and maintenance of highway stop signs for

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 932.
[2, 3] 25 Am Jur, Highways § 348.
    Municipal liability for injury due to condition of street. 109
    ALR 605.
[5] 14 Am Jur, Costs § 5.

a city street is a governmental function (CLS 1956, §§ 242.1, 257.610).

3. Same—Highways and Streets—Replacement of Stop Signs—Negligence.

Once a municipality has decided to exercise the discretion vested in it to declare one street a through street and erect a stop sign facing the subordinate street, the stop sign becomes an important part of the physical appurtenances of the street, the negligent failure to replace a stop sign that had been erected has a bearing on the safety and fitness of that street for travel, and the maintenance of a stop sign, once erected, is a part of its statutory liability (CLS 1956, §§ 242.1, 257.610).

4. Same—Notice of Defect in Highway.

A city must, in order to be held liable for damages arising from defective highway, have actual or constructive notice of the defect (CLS 1956, §§ 242.1, 257.610).

5. Costs—Construction of Statutes—Municipal Corporations—Highways and Streets—Public Safety.

No costs are allowed in a case of first impression construing a statute imposing specific liability for injuries resulting from municipal failure to maintain its streets in a condition reasonably safe and fit for travel (CLS 1956, §§ 242.1, 257.610).

Appeal from Wayne; Fitzgerald (Neal), J. Submitted April 5, 1960. (Docket Nos. 8, 9, Calendar Nos. 48,146, 48,147.) Decided December 2, 1960.

Case by Elwood O'Hare against the City of Detroit, a municipal corporation, its Department of Street Railways, Dossin's Food Products, a Michigan corporation, and others for personal injuries sustained in collision of automobile and passenger bus. Similar case by Cyril Van Kerschaever. Actions combined for motion and on appeal. Cases dismissed as to the defendant City of Detroit on motion. Plaintiffs appeal. Reversed and remanded.

*Ward, Plunkett & Cooney,* for plaintiffs.

*Nathaniel H. Goldstick,* Corporation Counsel, *Alfred Sawaya* and *Andrew F. Valenti,* Assistants Corporation Counsel, for defendant City of Detroit.

EDWARDS, J.   On motion in the Wayne circuit court plaintiffs' suits in these 2 cases were dismissed as to the city of Detroit only on the ground that they were barred by the doctrine of governmental immunity. On appeal plaintiffs claim that their actions come within a statutorily created exception to the governmental immunity doctrine.   The sole question for our review is:

"Does the common-law doctrine of municipal immunity while performing governmental functions yield to the specific statutory liability imposed on the municipality for failing to maintain its streets in a condition reasonably safe and fit for travel?"

The essential facts as recited in plaintiffs' declarations may be quickly stated.   Plaintiffs suffered injuries in a collision between the car in which they were riding and a D.S.R. bus.   The accident took place at the intersection of Moran and Milwaukee about 7 a.m. on February 24, 1956.

Ordinarily, Milwaukee is a stop street.   However, a stop sign requiring Moran traffic to stop had been knocked down the preceding day at about 7:45 a.m. by a truck belonging to defendant Dossin's Food Products.   Plaintiffs were traveling on Moran and entered Milwaukee without seeing the stop sign and without stopping.   Plaintiffs claim that the accident and their injuries were caused by the negligence of Dossin's driver in knocking the sign down and the negligence of the defendant city of Detroit in failing to put it back up or to erect some warning in its place.

In plaintiffs' declarations and at pretrial, plaintiffs claimed both actual and constructive notice to the city of the fact that the sign was down prior to the accident.   This is vigorously disputed by defendant city of Detroit but, of course, at this point, since we deal with dismissal of the declarations be-

fore trial, we accept as true plaintiffs' well-pleaded allegations. *General Motors Corp.* v. *Attorney General,* 294 Mich 558 (130 ALR 429); *Cortez* v. *Ford Motor Co.,* 349 Mich 108.

Defendants pleaded governmental immunity as an affirmative defense and moved to dismiss. See *Richards* v. *Birmingham School District,* 348 Mich 490; *Penix* v. *City of St. Johns,* 354 Mich 259. Plaintiffs, in disputing that defense below and here, relied upon the statute specifically imposing liability upon municipalities for bodily injuries resulting from municipal failure to keep the streets reasonably safe and fit for travel.

"Any person or persons sustaining bodily injury upon any of the public highways or streets in this State, by reason of neglect to keep such public highways or streets, and all bridges, sidewalks, crosswalks and culverts on the same in reasonable repair, and in condition reasonably safe and fit for travel by the township, village, city or corporation whose corporate authority extends over such public highway, street, bridge, sidewalk, crosswalk or culvert, and whose duty it is to keep the same in reasonable repair, such township, village, city or corporation shall be liable to and shall pay to the person or persons so injured or disabled, and to any person suffering damages by reason of such injury, just damages, to be recovered in an action of trespass on the case before any court of competent jurisdiction." CLS 1956, § 242.1 (Stat Ann 1958 Rev § 9.591).

Our question then becomes whether or not the failure of the city of Detroit to replace or warn concerning the knocked-down stop sign represented "neglect to keep * * * streets * * * in condition reasonably safe and fit for travel" within the meaning of this statute.

The trial judge concluded that the statute was not applicable. He said:

"It is to be noted, however, that this section deals with the liability of a city for injuries arising out of the failure to maintain public highways and streets in reasonable repair. The failure of a city to maintain a stop sign does not come under this heading. This is clearly a function of a different character, and has been generally held to be a governmental function with no liability attaching for failure to perform."

We agree that the establishment and maintenance of stop signs is a governmental function. *Tolliver v. City of Newark*, 145 Ohio St 517 (62 NE2d 357, 161 ALR 1391); *Martin v. City of Winchester*, 278 Ky 200 (128 SW2d 543).

In these 2 cases, which were cited and relied upon by the trial judge, it was held that suits based upon allegedly negligent exercise of legislative discretion to erect or not to erect stop signs were barred by the doctrine of governmental immunity.

We do not, however, deal in the instant case with any challenge to the discretionary right of the city to erect or not to erect, or to remove, stop signs by legislative enactment (see CLS 1956, § 257.610 [Stat Ann 1960 Rev § 9.2310]). The current declarations are based upon a claim of negligence in the city's failing properly to maintain a stop sign which had been duly authorized and placed in position.

Our current declarations claim the advantage of the specific statutory exception to the immunity doctrine which we have quoted.

We cannot agree with the trial judge that "failure of a city to maintain a stop sign does not come under this heading" of "failure to maintain public highways and streets in reasonable repair."

It seems obvious to us that once a municipality has decided to exercise the discretion vested in it to declare one street a through street and erect a stop sign facing the subordinate street, the stop sign be-

comes an important part of the physical appurtenances of the street.

This Court has previously held this statute to impose liability on local governments for (1) failure to maintain a sidewalk so as to prevent the existence of shallow holes (*Wolverton* v. *Village of Saranac,* 171 Mich 419); (2) failure to replace a rotten light pole before it fell (*Rufner* v. *City of Traverse City,* 296 Mich 204); (3) failure properly to ground an electric light pole (*Cabana* v. *City of Hart,* 327 Mich 287 [19 ALR2d 333]); (4) failure to guard a hole in a sidewalk under repair (*Belyea* v. *City of Port Huron,* 136 Mich 504); (5) failure to post proper signs, lights, or warnings concerning dangerous obstructions or hazards (*Joslyn* v. *City of Detroit,* 74 Mich 458; *Bonneville* v. *City of Alpena,* 158 Mich 279; *Longstreet* v. *County of Mecosta,* 228 Mich 542); (6) failure to remove a clothesline strung across a public sidewalk (*Burgdorf* v. *Holme-Shaw,* 356 Mich 45); and (7) failure to replace the center post to a safety barrier, which had been broken off (*Maxson* v. *Bay County,* 290 Mich 86).

We deal in the instant case with a street which had been accorded official priority and on which traffic moved with the assurance that intersecting traffic would be warned and commanded to stop. It seems obvious to us that the knocking down of a stop sign facing the intersecting street, and the negligent failure to replace same, has a greater bearing on the safety and fitness of that street for travel than any of the fact situations recited above.

In the *Rufner Case, supra,* the logic of these cases is clearly outlined (p 209):

"Assuming that the city in erecting and maintaining the pole in question was employed in a governmental function, it is our opinion that the above highway statute removed the immunity of the city from liability. The reason that a city was not liable

at common law for injuries caused by defective highways was because the duty to repair was a public one, and thus, since the city in the management and control of its highways was acting in a governmental capacity, it was immune from liability. *City of Detroit* v. *Blackeby,* 21 Mich 84 (4 Am Rep 450); *Roberts* v. *City of Detroit,* 102 Mich 64 (27 LRA 572). In effect the above statute removes the exemption from liability and declares that the city must keep its highways reasonably safe for travel."

We recognize, of course, that in many States the defense of governmental immunity would be effective to bar the suits filed by these plaintiffs. *Arthur* v. *City of Albany,* 98 Ga App 746 (106 SE2d 347); *Kirk* v. *City of Muskogee,* 183 Okla 536 (83 P2d 594); *Burchett* v. *City of Stanton* (Tex Civ App), 262 SW2d 952; *Edwards* v. *City of Shreveport* (La App), 66 So2d 373; *Auslander* v. *City of St. Louis,* 332 Mo 145 (56 SW2d 778); *Hammell* v. *City of Albuquerque,* 63 NM 374 (320 P2d 384).

Inspection of the opinions in these cases, however, does not disclose a statute comparable to the Michigan municipal liability statute.

Several States have indeed imposed liability in similar factual situations even without a similar statutory mandate. *Lyle* v. *Fiorito,* 187 Wash 537 (60 P2d 709); *Phinney* v. *City of Seattle,* 34 Wash2d 330 (208 P2d 879); *Johnston* v. *City of East Moline,* 338 Ill App 220 (87 NE2d 22), affirmed 405 Ill 460 (91 NE2d 401); *Hewitt* v. *Venable* (DC App, Fla), 109 So2d 185, 116 So2d 654; *Dudum* v. *City of San Mateo,* 167 Cal App2d 593 (334 P2d 968); *Irvin* v. *Padelford,* 127 Cal App2d 135 (273 P2d 539).

In the *Lyle Case, supra,* the court said (pp 544, 545):

"The constant purpose of laws and rules regulating the use of roads is to prevent accidents and to

expedite traffic, insofar as speed is consistent with safety. * * *

"Under the law, traffic approaching an arterial from an intersecting street must yield the right-of-way. * * * This exception to the law giving the driver on the right the preference becomes an absolute menace unless drivers approaching an arterial are warned of that fact. * * * Mr. Shaffer was not familiar with the physical situation, and in the absence of the usual warning and stop signs, had no notice of the fact that he was approaching an intersecting arterial highway where he was required to yield the right-of-way to traffic approaching from either direction."

And in *Murphy* v. *De Revere,* 279 App Div 929 (111 NYS2d 2), affirmed 304 NY 922 (110 NE2d 740), the New York courts found liability as a result of a statute requiring the village to maintain a stop sign.

Dealing in a case of first impression with the Michigan statute imposing specific liability for injuries resulting from municipal failure to maintain its streets in a condition reasonably safe and fit for travel, we hold that maintenance of a stop sign, once erected, is part of that statutory liability.

The city must, of course, have actual or constructive notice of the defect. *Jones* v. *City of Lansing,* 273 Mich 623.

Reversed and remanded for trial. No costs, matters of statutory construction being involved.

Dethmers, C. J., and Carr, Kelly, Smith, Black, Kavanagh, and Souris, JJ., concurred.